IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID EDGAR BENNETT                                                    PLAINTIFF

v.                          Civil No. 13-2182

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff, David Bennett, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.    Procedural Background:

The Plaintiff filed his applications for DIB and SSI on March 7, 2011, alleging an onset date of March 5, 2011, due to chronic obstructive pulmonary disease ("COPD"), a heart condition, a skeletal condition, and arthritis.  Tr. 114-121, 152, 162, 164, 184-185, 194.  His claims were denied both initially and upon reconsideration.  Tr. 49-64.  An administrative hearing was then held on July 23, 2012.  Tr. 23-48.  Plaintiff was both present and represented at that hearing.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

A the time of the administrative hearing, Plaintiff was 47 years old and possessed a general equivalency degree.  Tr. 26, 152.   He had past relevant work ("PRW") as millwright helper and truck driver.  Tr. 27-29, 130, 152-153, 176-183.

On February 1, 2013, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's history of coronary artery disease, asthma, chronic bronchitis, and COPD did not meet or equal any Appendix 1 listing.  Tr. 10-11.   The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform light work with the following limitations: "the claimant can perform unskilled work; and he must also avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and other airborne irritants." Tr. 11.   With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform work as a cashier, fast food worker, clerical worker, and escort vehicle driver.  Tr. 16.

Plaintiff exhausted his administrative remedies when the Appeals Council denied his request for review on June 7, 2013.  Tr. 1-4.  Subsequently, Plaintiff filed this action.  ECF No. 1. This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 11, 12.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

## II.    **Applicable Law**:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find

it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.    The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or

3

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)-(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.   **Discussion:**

On appeal, Plaintiff raises two points of error.  He contends that the ALJ committed reversible error when 1) he relied on the opinion of a non-examining, consulting doctor and 2) failed to give specific reasons for disregarding the opinions of the treating sources.  For the reasons enumerated below, we disagree.

Under the social security regulations, the commissioner will generally give a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R.§ 416.927(d)(2)3; *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). Yet such weight is neither inherent, nor automatic and does not "obviate the need to evaluate the record as whole." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).  The commissioner "'may discount or even  disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the

4

credibility of such opinions.'" *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)); *accord Hacker*, 459 F.3d at 937 (noting we have declined "to give controlling weight to the treating physician's opinion because the treating physician's notes were inconsistent with her . . . assessment"). However, whether granting "a treating physician's opinion substantial or little weight,", the commissioner must "always give good reasons . . . for the weight" she gives. 20 C.F.R. § 416.927(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

Opinions of non-examining physicians, on the other hand, generally deserve little weight in the overall evaluation of disability. *Davis v. Schweiker*, 671 F. 2d 1187 (8th Cir. 1982), *Taylor v. Bowen*, 805 F. 2d 329, 331 (8th Cir. 1986); and *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010). However, when supported by the other evidence, including the Plaintiff's testimony, his or her reported level of activity, and treatment notes from treating sources, the ALJ is entitled to rely on the assessment of a non-examining consultant. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess residual functional capacity); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, State agency physicians' assessments, and claimant's reported activities of daily living supported residual functional capacity assessment).

In the present case, the RFC evidence consists of assessments from a one time examining consultant, Dr. Michael Westbrook and a non-examining, consultative examiner, Dr. Alice Davidson. On September 5, 2011, Dr. Davidson reviewed Plaintiff's medical records and concluded that he could perform light work, but must avoid concentrated exposure to fumes,

odors, dusts, gases, and poor ventilation. Tr. 233-248. This assessment was reviewed by another non-examining consultant, Dr. Steven Strode on December 5, 2011, and affirmed. Tr. 256-258.

On August 23, 2012, Plaintiff was sent to Dr. Mike Westbrook for a general physical examination. Tr. 318-328. Following a thorough examination during which no abnormalities were noted, Dr. Westbrook diagnosed Plaintiff with CAD status post stent placement, COPD, chronic back pain, and left knee pain. He noted that a chest x-ray revealed scattered granulomas, but no acute changes. Dr. Westbrook was of the opinion that Plaintiff could lift and carry up to 20 pounds occasionally; sit for 6 hours out of an 8-hour workday; stand and walk for 2 hours out of an 8-hour workday; occasionally reach, push/pull, operate foot controls, climb stairs and ramps, balance, stoop, kneel, crouch, crawl, work moving mechanical machinery, and work in humidity and wetness and should never work hear unprotected heights; dust, fumes, odors, and pulmonary irritants; extreme cold; or extreme heat. Moderate noise restrictions were also noted.

In reviewing the evidence, we make two important observations about Dr. Wesbrook's assessment. First, Dr.Westbrook examined Plaintiff on only one occasion. And, second, Dr. Westbrook noted that Plaintiff's physical examination was within normal limits. No skin changes, cyanosis, clubbing, jaundice, range of motion limitations, neurological deficits, muscle weakness, muscle atrophy, sensory abnormalities, gait/coordination problems, or limb function abnormalities were documented, yet he assigned a variety of postural limitations. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). The Plaintiff agrees that there is "no logical bridge between the doctor's findings and the doctor's RFC. Pl. Brief 14. However, he contends that the ALJ should have recontacted Dr. Westbrook to clarify his report. We disagree.

6

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure her decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Id*. In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).

Here, the record reveals that Plaintiff suffers from CAD status post stenting, COPD with only a mild degree of restrictive lung disease, hypertension, hyperlipidemia, back pain, left knee pain, and hand pain. Plaintiff did suffer a myocardial infarction in January 2010, after which a stent was placed in his right coronary artery. Tr. 277-294. Plaintiff's recovery period was uneventful, and he was released to return to work in February 2010. Tr. 295-300. Plaintiff did not follow up with the cardiologist as recommended, and did not seek out any further medical treatment for any of his alleged impairments until March 2011. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility). And, although Plaintiff contends that he did not have insurance or the financial means to follow up or fill his prescriptions, the record is void of any evidence suggesting that he was ever denied treatment due to his financial situation. There is also no evidence to suggest that he sought out medical services offered to indigent or low income individuals. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992) (a lack of evidence

AO72A
(Rev. 8/82)

that the claimant attempted to find any low cost or no cost medical treatment for her alleged pain and disability is inconsistent with a claim of disabling pain).

When Plaintiff did establish care with Dr. Shawn Miller, he reported shortness of breath, anxiety, back pain with intermittent numbness in his legs, and occasional chest pain relieved with Nitroglycerine.  Records dated between March 2011 and August 2012 reveal that Plaintiff's chest pain continued to be responsive to Nitroglycerine and his shortness of breath remedied with Advair, Singulair, and Ventolin.  Tr. 217-220.  *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).  The record does reveal that tobacco dependence was an exacerbating factor.[2]  *See Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (there is no question that Plaintiff's smoking had a direct impact on his pulmonary impairments).  Tr. 307-309.  Further, his back pain was responsive to Flexeril, Mobic, and Prednisone.  Tr. 214-216, 216-217.  And, the record contains no objective evidence to document the cause or severity of Plaintiff's alleged pain.  In fact, physical exams revealed no abnormalities aside from tenderness, and Plaintiff admitted that he had sought out neither chiropractic treatment nor physical therapy to relieve his discomfort.  *See Forte*, 377 F.3d at , 895 (holding that lack of objective medical evidence is a factor an ALJ may consider).

Plaintiff's reported activities also call into question the severity of his alleged impairments.  In February 2010, shortly after his stent was placed, Plaintiff reported using a splitting maul.  Tr.  269-271.  And in April 2012, he reported changing the oil in his truck.  Tr.

---

[2]And, while we do recognize the addictive nature of tobacco dependence and the fact that Plaintiff did cut back on his cigarette consumption, the mere fact that he continued to participate in an activity that exacerbated his pulmonary impairments was still a proper consideration for the ALJ.

8

305-307.  On an adult function report, Plaintiff also reported the ability to care for his personal hygiene with some limitations associated with pain ans shortness of breath, prepare simple meals, shop in stores for groceries once a week for approximately twenty to thirty minutes, handle finances, watch television, and talk on the phone with family and friends daily.  Tr. 167-174.  Dr. Westbrook even noted that Plaintiff could perform activities such as shopping; ambulate without the use of a wheelchair, walker, cane, or crutches; walk a block at a reasonable pace on rough and uneven surfaces; climb a few steps at a reasonable pace with the use of a single hand rail; prepare simple meals and feed himself; care for his personal hygiene; and sort, handle, and use paper files.  Tr. 318-328.

Accordingly, the undersigned finds that Dr. Westbrook's opinion was not entitled to significant weight, as it is contradicted by the overall evidence of record.  Further, the ALJ's failure to recontact Dr. Westbrook does not constitute error, as there is ample evidence in the record upon which the ALJ could base his RFC assessment. And, we find that the ALJ was entitled to rely on the RFC of the non-examining consultative examiner because it is supported by the record.

**V.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

9

DATED this 11th day of December 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

10